## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DANIELLE WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV517 |
| | ) | |
| TRINITY INDUSTRIES, INC. & | ) | |
| TRINITY HIGHWAY PRODUCTS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on "Plaintiff's Motion for Leave to Amend Complaint" (Docket Entry 68) (the "Motion to Amend") and "Defendants' Request for Judicial Notice in Support of Opposition to Plaintiff's Motion for Leave to Amend Complaint" (Docket Entry 73) (the "Judicial Notice Request"). For the reasons stated below, the Court will grant in part and deny in part the Motion to Amend, and will deny as moot the Judicial Notice Request.[1]

---

[1] For reasons stated in <u>Deberry v. Davis</u>, No. 1:08cv582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to the Motion to Amend. <u>See also</u> <u>Everett v. Prison Health Servs.</u>, 412 F. App'x 604, 605 & n.2 (4th Cir. 2011) (explaining that, where the plaintiff "moved for leave to amend her complaint[] . . . to add a state-law claim of medical malpractice," "the magistrate judge denied [that] motion" and the plaintiff "timely objected, thereby preserving the issue for review by the district court," the district court "could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law'" (citing 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2010); Fed. R. Civ. P. 72(a))).

## BACKGROUND

This case arises from a vehicle accident in which Plaintiff alleges that while driving to work one morning "she fell asleep and collided with an extruder-type guardrail end terminal fitted on the blunt end of a line of guardrail" (the "ET-Plus"). (Docket Entry 1, ¶ 7.) Plaintiff asserts that the ET-Plus "was designed, manufactured and marketed by [Defendants]" (id. ¶ 10), and that, "[a]t the time of the accident, the [ET-Plus] in question was defective and unreasonably dangerous" (id. ¶ 8), causing Plaintiff to "suffer[] severe damage" (id. ¶ 9).

As a result, Plaintiff filed "Plaintiff's Original Complaint and Jury Demand" (id. at 1) (the "Original Complaint") in the United States District Court for the Eastern District of Texas (the "Texas Court"), asserting a negligence and strict product liability claim against Defendants under Texas law (id. ¶¶ 26-27; see also Docket Entry 68 at 1 (observing that the Original Complaint "asserted claims against the Defendants under Texas law")).[2] In answering the Original Complaint, Defendants likewise relied on Texas law. (Docket Entry 8 at 4-6; Docket Entry 9 at 4-6.) Thereafter, the Texas Court, sua sponte, transferred this action to this Court. (Docket Entry 30 at 6.)

---

[2] Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

2

After this transfer, Defendants filed "Defendants' Motion for Judgment on the Pleadings" (Docket Entry 40) (the "Judgment Motion") and Plaintiff filed "Plaintiff's Motion to Dismiss Complaint Without Prejudice Pursuant to Rule 41(a)(2)" of the Federal Rules of Civil Procedure (the "Rules") (Docket Entry 44) (the "Dismissal Motion"). Through the Judgment Motion, Defendants asserted (for the first time) that North Carolina law, particularly North Carolina's defense of contributory negligence, bars the Original Complaint. (Docket Entry 40 at 1-2; see also Docket Entry 41 at 15-19.) In response, the parties proposed in their "Joint Rule 26(f) Report and Discovery Plan" (Docket Entry 53) (the "Rule 26(f) Report"), that within 21 days of the Court's resolution of the Dismissal Motion and Judgment Motion, "Plaintiff may file a motion for leave to amend [the Original] Complaint," which "Defendants will oppose" (id. at 5). The Court adopted, in relevant part, the Rule 26(f) Report. (See Text Order dated Sept. 17, 2015.) Thereafter, the Court (per United States District Judge Loretta C. Biggs) granted (upon Plaintiff's acceptance of certain conditions) the Dismissal Motion (Docket Entry 61) and denied the Judgment Motion (Docket Entry 64), specifically declining to decide whether North Carolina or Texas substantive law applies in this case (id. at 7 (noting that "[n]othing in this [o]rder should be

3

construed as this Court resolving the conflicts of law issue")).[3] Pursuant to the Rule 26(f) Report, Plaintiff then timely filed the Motion to Amend (Docket Entry 68), along with a proposed "First Amended Complaint" (Docket Entry 68-1) (the "Proposed Complaint").

The Motion to Amend requests leave to amend the Original Complaint "to make clear that, if North Carolina law applies, [Plaintiff] can readily allege the facts and elements supporting all available claims under North Carolina law." (Docket Entry 68 at 2.)[4] The Motion to Amend proposes two categories of amendments. First, Plaintiff seeks to add two new claims: (1) an "Unfair and Deceptive Trade Practices" claim ("the UDTP Claim") (Docket Entry 68-1 at 14 (italics omitted)), and (2) a claim for "Gross Negligence, Intentional, Willful, Wanton Conduct / Punitive Damages" (the "Gross Negligence Claim") (id. at 12 (italics omitted)). Second, although the Original Complaint cites to United States of America ex rel. Joshua Harman v. Trinity Industries, Inc., 2:12-CV-89 (E.D. Tex.) (the "Harman Case") (Docket Entry 1, ¶ 24), the Proposed Complaint "seeks to reference . . . evidence [in the Harman Case] in greater detail." (Docket Entry 68 at 8).[5]

---

[3] Plaintiff declined to accept the Court's conditions in the order granting the Dismissal Motion, and instead elected to withdraw the Dismissal Motion. (Docket Entry 62.)

[4] In moving to amend, Plaintiff does not concede that North Carolina law governs her claims. (Docket Entry 68 at 2.)

[5] In the Harman Case, the jury found that Defendants violated the False Claims Act, 31 U.S.C. §§ 3729-3733, by knowingly making,

4

In particular, the Original Complaint asserts that during a jury trial in the Harman Case, "it was revealed for the first time that [Defendants], in conjunction with Texas A & M [University], had conducted five crash tests around 2005 of a flared ET-Plus configuration which is substantially similar to many of the installed configurations on the road today which all failed." (Docket Entry 1, ¶ 24.) Plaintiff contends that a post-trial order entered after she had filed the Original Complaint "now makes clear that the specific facts found by the jury in [the Harman Case) were substantially supported by the evidence . . . ." (Docket Entry 68 at 8; see also Docket Entry 68-1, ¶¶ 39-41.) Accordingly, the Proposed Complaint includes the following assertions with regard to the Harman Case:

> The evidence presented in [the Harman Case] established that [Defendants] modified the design characteristics of the approved version of the ET-Plus; that [Defendants] concealed those modifications from the [Federal Highway Administration]; that [Defendants] made those design modifications in order to reduce the cost of producing the ET-Plus; and that [Defendants] certified to [their] customers that the altered ET-Plus was identical to the approved version of the ET-Plus.

---

using, or causing to be made or used, a false record or statement material to a false or fraudulent claim to government agencies. See Harman, 2:12-CV-89, Docket Entry 570 at 1-2 (E.D. Tex. Oct. 20, 2014) (Verdict Form); see also United States ex rel. Harman v. Trinity Indus., ___ F. Supp. 3d ___, ___, 2015 WL 10734028, at *22 (E.D. Tex. June 9, 2015) (post-trial order). Defendants' appeal of the final judgment entered against them in the Harman Case remains pending in the United States Court of Appeals for the Fifth Circuit. See id. at Docket Entry 732 (E.D. Tex. Aug. 28, 2015).

5

The defects in the unapproved, modified ET-Plus system, the failure of that product to perform as it was designed and intended, and the conduct of [Defendants] in inserting that altered ET-Plus system into the marketplace caused or, in the alternative, significantly enhanced, the serious injuries suffered by [Plaintiff] in the incident.

(Docket Entry 68-1, ¶¶ 41-42 (paragraph numbering omitted).)[6]

Defendants oppose the Motion to Amend on the grounds that (1) the proposed amendments qualify as "futile given that the claims [P]laintiff seeks to add are legally invalid," and (2) "allowing Plaintiff to add these new claims would deeply prejudice [Defendants] by further delaying the case." (Docket Entry 72 at 1.)[7]

## ANALYSIS

Given the procedural posture of this case and Defendants' opposition to the Motion to Amend, Rule 15 requires Plaintiff to obtain "the [C]ourt's leave" to amend the Original Complaint. Fed. R. Civ. P. 15(a)(2). Rule 15 further directs that "[t]he [C]ourt should freely give leave when justice so requires." Id. Under this standard, the Court possesses some discretion to deny leave,

---

[6] Defendants provided a "redline comparison" of the Original Complaint and Proposed Complaint that highlights each alteration and addition. (See Docket Entry 72-1.)

[7] Defendants assert that, because of the futility and prejudicial effect of the new claims, the Court should not allow the addition of facts supporting those claims. (See Docket Entry 72 at 1.) Notably, however, Defendants do not contend that Plaintiff engaged in bad faith in requesting this amendment. (See id. at 1-14.)

6

"but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." Foman v. Davis, 371 U.S. 178, 182 (1962).

The Court may deny such leave "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010); accord Foman, 371 U.S. at 182 (explaining that the reasons for denying leave to amend a complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment"). "[M]ere delay in moving to amend is 'not sufficient reason to deny leave to amend.'" Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

With regard to futility of amendment, leave to amend "should only be denied . . . when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510; see also id. at 511 (granting leave to amend where claim "is not obviously frivolous"). "An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to [Rule] 12(b)(6)." Syngenta Crop Prot., Inc. v. EPA, 222 F.R.D. 271, 278 (M.D.N.C. 2004). A Rule

7

12(b)(6) motion tests the legal sufficiency of a complaint. Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

## I. UDTP Claim

First, the Court considers Defendants' argument that the UDTP Claim fails as futile, i.e., "legally invalid." (Docket Entry 72 at 1.) Specifically, Defendants assert that North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, et seq. (the "Act") protects "'aggrieved *consumers*'" (Docket Entry 72 at 6 (emphasis in original)), and "Plaintiff is not a 'consumer'" because "[she] did not purchase the ET-Plus System at issue; she crashed her car into it" (id. at 8).[8] In response, Plaintiff asserts that, by crashing her car into the ET-Plus, she became an intended "user" of the ET-Plus, and that, as a "user" of

---

[8] Defendants further contend (1) that the UDTP Claim fails because a claim under the Act based on misrepresentations requires a showing of "actual and reasonable reliance" (Docket Entry 72 at 11), and (2) that, in this case, "the (false) premise of [P]laintiff's [UDTP C]laim is that [Defendants] supposedly misrepresented facts *to government agencies*, but [P]laintiff does not allege any such misrepresentations to her, and certainly does not allege that she relied on any statements by [Defendants]" (id. at 1 (emphasis in original)). Because the Court finds that Plaintiff does not qualify as a consumer under the Act, and therefore cannot bring the UDTP Claim, the Court need not decide whether Defendants' alternative argument would prevail. The Court notes, however, that failing to disclose a known product defect to consumers arguably could constitute an "unfair practice" under N.C. Gen. Stat. § 75-1.1. See Johnson v. Ford Motor Co., Civ. Action No. 3:13-6529, 2015 WL 7571841, at *13 (S.D. W. Va. Nov. 24, 2015) (concluding that "[t]he practice of knowing about a defective product but then failing to disclose that to consumers and instead marketing the product as safe and offering an alternative explanation for the manifestation of that defect, if true, could constitute . . . an unfair practice under the [Act]").

the ET-Plus, she qualifies as a "consumer" within the protections of the Act.  (Docket Entry 75 at 3-5.)

The Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). Under the Act, "'commerce' includes all business activities, however denominated." N.C. Gen. Stat. § 75-1.1(b).  The Act further provides that:

> If <u>any person</u> shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done . . . .

N.C. Gen. Stat. § 75-16 (emphasis added). The Act does not define "person," or designate those who have standing to sue under its protections. <u>See</u> N.C. Gen. Stat. §§ 75-1.1, et seq. However, North Carolina courts have consistently recognized that, through its use of the "[i]f any person" language, "the [North Carolina] General Assembly intended to provide a recovery for all <u>consumers</u>" injured by violations of the Act. <u>Hyde v. Abbott Labs., Inc.</u>, 123 N.C. App. 572, 578, 473 S.E.2d 680, 684 (1996) (emphasis added) (citing <u>Marshall v. Miller</u>, 302 N.C. 539, 543-44, 276 S.E.2d 397, 400 (1981)); <u>see also</u> <u>HAJMM Co. v. House of Raeford Farms, Inc.</u>, 328 N.C. 578, 592, 403 S.E.2d 483, 492 (1991) (explaining that "[t]he Act was clearly intended to benefit consumers, but its protections extend to businesses in appropriate contexts" (internal

9

citation omitted)); <u>Marshall</u>, 302 N.C. at 543, 276 S.E.2d at 400 (observing that, "[i]n enacting [N.C. Gen. Stat. §] 75-16 . . ., our Legislature intended to establish an effective private cause of action for aggrieved consumers in this State").[9]

Because the Act benefits consumers, claims brought under its protections typically "involve buyer and seller." <u>Durling v. King</u>, 146 N.C. App. 483, 488, 554 S.E.2d 1, 4 (2001). The buyer-seller relationship aligns with the Act's "fundamental purpose" - "to 'protect the consuming public.'" <u>Prince v. Wright</u>, 141 N.C. App. 262, 268-69, 541 S.E.2d 191, 197 (2000) (holding that employer-employee relationships do not fall within the intended scope of the Act) (quoting <u>Skinner v. E.F. Hutton & Co., Inc.</u>, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985)); <u>White v. Thompson</u>, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010) (explaining that, in enacting the Act, the North Carolina General Assembly stated its purpose "'is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair

---

[9] At least one other court has construed "any person" in the context of an unfair trade practices act as referring to "consumers." <u>See</u> <u>CollegeNet, Inc. v. Embark.Com, Inc.</u>, 230 F. Supp. 2d 1167, 1172-75 (D. Or. 2001) (discerning the meaning of "person" under Oregon's unfair trade practices act, concluding "that the [act] provides a cause of action only for consumers," and ordering dismissal of claim under said act because the claimant qualifies as a seller and not a "consumer").

10

dealings between buyers and sellers at all levels of commerce be had in this State'" (quoting N.C. Gen. Stat. § 75-1.1(b) (1975))). Accordingly, North Carolina courts routinely emphasize that individuals qualify as consumers for protection under the Act when they participate in an exchange of value as a purchaser of some item. See, e.g., Pearce v. American Def. Life Ins. Co., 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986) (explaining that, "[t]he business of insurance is unquestionably 'in commerce' insofar as an 'exchange of value' occurs when a consumer purchases an insurance policy; people who buy insurance are consumers whose welfare [the Act] was intended to protect" (internal citation omitted)).

Nevertheless, Plaintiff maintains that "several North Carolina authorities make clear than an intended user of a product is a proper plaintiff" under the Act. (Docket Entry 75 at 5.) Plaintiff relies on two decisions in support of this assertion. (See id. (citing Hyde, 123 N.C. App. at 573-74, 473 S.E.2d at 681-82, and Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 68, 653 S.E.2d 393, 397 (2007)).) Neither decision can bear the weight Plaintiff would have the Court place upon it.

The first case cited by Plaintiff involved an antitrust class action lawsuit in which the defendants allegedly violated the Act by "'engaging in a continuing conspiracy to fix the wholesale price of infant formula sold within the United States, including North Carolina.'" Hyde, 123 N.C. App. at 573, 473 S.E.2d at 681. The

11

<u>Hyde</u> plaintiffs qualified as "indirect purchasers from the defendant manufacturers because they purchased infant formula through parties other than the manufacturer." <u>Id.</u> at 574, 473 S.E.2d at 681-82. These plaintiffs "contended that they paid higher prices than they would have paid but for the alleged illegal conduct [of the defendant manufacturers]." <u>Id.</u>, 473 S.E.2d at 682. The <u>Hyde</u> defendants sought dismissal on the ground that, "as indirect purchasers, [the plaintiffs] lacked standing to bring [an] action under N.C.[ Gen. Stat.] § 75-16." <u>Id.</u>

The trial court agreed and granted the defendants' motion to dismiss, <u>id.</u>, but the North Carolina Court of Appeals reversed, explaining that:

> Prior to a 1969 revision, N.C.[ Gen. Stat.] § 75-16 began: "*If the business* of any person, firm or corporation shall be broken up, destroyed or injured . . . ." (emphasis supplied). In 1969, the General Assembly amended this section. The first sentence now begins:
>
> > *If any person shall be injured or the business* of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing . . . in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action . . . .

<u>Id.</u> at 576-77, 473 S.E.2d at 683 (emphasis and alterations in original). Based on that revision, the North Carolina Court of Appeals reasoned that "the [North Carolina] General Assembly clearly intended to expand the class of persons with standing to sue for a violation of [the Act] to include any person who suffers

12

an injury under [the Act], regardless of whether that person purchased directly from the wrongdoer." Id. at 577, 473 S.E.2d at 684 (emphasis added).  The Hyde Court thus held that as "indirect purchasers," the plaintiffs qualified as "consumers" who could maintain a claim under the Act.  Id. at 584, 473 S.E.2d at 688.

Notably, even though the Hyde plaintiffs did not purchase the infant formula directly from the manufacturer, their alleged injuries (i.e., overpayment due to alleged price fixing) arose from their exchange of value for a product (i.e., infant formula). Here, by contrast, Plaintiff did not purchase an ET-Plus (either directly or indirectly) from Defendants. (See Docket Entry 68-1.) Instead, Plaintiff alleges that she unintentionally crashed her car into an ET-Plus.  (Id. ¶ 7.)  Because Plaintiff did not exchange value for an ET-Plus, she does not qualify as a "purchaser."  In sum, Hyde equates "purchaser" with "consumer," but does not establish that a non-purchaser/"user" (like Plaintiff) constitutes a "consumer" for purposes of the Act.

In the second case Plaintiff cites to support her contention that a "user" of a product can bring a claim under the Act, the plaintiff-father made a down payment on a mobile home for the plaintiff-daughter in a "buy for" arrangement, whereby the plaintiff-daughter served as the "beneficiary," "selected [the home's] interior furnishings and amenities," and "planned to live in the home and make the monthly installment payments."  Walker,

13

362 N.C. at 64, 653 S.E.2d at 395. After delivery of the mobile home, the plaintiffs discovered numerous defects. Id. at 65, 653 S.E.2d at 395. As a result, the plaintiff-daughter never moved into the home, and instead joined her father in suing the home's manufacturer for unfair and deceptive trade practices. Id., 653 S.E.2d at 395-96. The manufacturer contended that the plaintiff-daughter could not sue under the Act "because she was not a 'buyer' of the home." Id. at 66, 653 S.E.2d at 396. The North Carolina Supreme Court disagreed, reasoning that:

> as the person who selected the interior details for the home, who planned to live in the home, and who was going to make the monthly installment payments, [the plaintiff-daughter] was a consumer of the mobile home supplied by defendant. When defendant supplied a defective home, [the plaintiff-daughter] suffered a resulting injury. Accordingly, she has standing as a "person . . . injured" under N.C.[ Gen. Stat.] § 75-16.

Id. at 68, 653 S.E.2d at 397 (emphasis added). Importantly, the Walker Court, like the Hyde Court, linked the definition of "consumer" to a purchase scenario, emphasizing that the plaintiff-daughter could bring suit under the Act because she, inter alia, selected the mobile home and planned to make the monthly payments. Id.

Unlike the plaintiff-daughter in Walker, Plaintiff in this case did not select, transact for, or plan to make payments for an ET-Plus. Instead, Plaintiff unintentionally "used" the ET-Plus by crashing her car into it. Under these circumstances, Plaintiff does not qualify as a "consumer" under the Act, and therefore may

14

not bring the UDTP Claim.[10]  Accordingly, the UDTP Claim fails as

a matter of law, and allowing Plaintiff to include the UDTP Claim

in the Proposed Complaint would thus prove futile.[11]

---

[10] The Court finds additional support for the conclusion that "consumer" status under the Act requires some purchase-type transaction in Investors Title Ins. Co. v. Herzig, 330 N.C. 681, 413 S.E.2d 268 (1992).  In Herzig, the plaintiff issued a title insurance policy to a bank in reliance on a defendant's certification of title.  Id. at 687, 413 S.E.2d at 271.  That defendant intentionally omitted that he had encumbered the land subject to the title insurance policy.  Id. at 686-87, 413 S.E.2d at 270.  After the defendant defaulted on the loan and the bank attempted to foreclose on the property, the plaintiff paid the bank the outstanding amount (plus interest) that remained owing on the loan.  Id. at 687, 413 S.E.2d at 271.  In turn, the bank assigned all of its rights arising out of the claim that it had against the defendants to the plaintiff.  Id.  The plaintiff then attempted to sue the defendants for unfair and deceptive trade practices, but the North Carolina Supreme Court rejected the attempt, observing that "[t]he plaintiff . . . is not an aggrieved 'consumer' because it is not a 'consumer' with respect to defendants.  Indeed, [the plaintiff] is the 'seller' of the title insurance which was purchased by [the defendant] to protect the [b]ank."  Id. at 689, 413 S.E.2d at 272.  The Herzig court thus equated purchasers with "consumers," for purposes of the Act.  See id.  The Court further precluded assignment of claims brought under the Act because the "legislative intent and spirit of the Act" focuses on protection of "the consumer."  Id.  The Herzig Court's emphasis on the buyer-seller relationship and the "personal nature" of a claim under the Act thus bolster the conclusion that "consumer" denotes purchaser.

[11] Defendants request that the Court take judicial notice of certain documents (Docket Entries 73-1, 73-2, 73-3) that they contend establish that "Plaintiff does not, and cannot, allege actual and reasonable reliance on any supposed misrepresentation," rendering the UDTP Claim "futile" (Docket Entry 72 at 11). Because, for reasons explained above, Plaintiff cannot bring the UDTP Claim, the Court need not consider Defendants' reliance-based futility argument or these related documents, and therefore will deny as moot the Judicial Notice Request (Docket Entry 73).

## II. Gross Negligence Claim

### A. Futility

Next, Plaintiff requests leave to add the Gross Negligence Claim as well as additional facts from the Harman Case that allegedly demonstrate that "Defendants' conduct was intentional, willful, and wanton, thereby eliminating any issue of whether contributory negligence might apply" to bar Plaintiff's product liability claim and supporting an award of punitive damages in Plaintiff's favor. (Docket Entry 68 at 7-8; see also Docket Entry 68-1, ¶¶ 39-42, 55-64.) Defendants oppose those additions, arguing that, "[u]nlike the defense to common law negligence, the contributory negligence bar in product liability cases is statutory." (Docket Entry 72 at 11.) Because, according to Defendants, N.C. Gen. Stat. § 99B-4 contains no exception for gross negligence, their "alleged intentional, willful, or wanton misconduct is irrelevant to [Defendants'] defense of contributory negligence." (Id. at 12.) Plaintiff maintains that contributory negligence provides no defense to willful or wanton misconduct in the product liability context. (Docket Entry 75 at 8-10.)

As a general rule, "[c]ontributory negligence is not a bar to a plaintiff's recovery when the defendant's gross negligence, or willful or wanton conduct, is a proximate cause of the plaintiff's injuries." Yancey v. Lea, 354 N.C. 48, 51, 550 S.E.2d 155, 157 (2001). In Morgan v. Cavalier Acquisition Corp., 111 N.C. App.

16

520, 432 S.E.2d 915 (1993), the North Carolina Court of Appeals recognized that this doctrine extends to product liability actions. There, the estate of an individual killed by a vending machine brought a product liability action against the corporation that purchased the assets of the vending machine manufacturer and the company that delivered and placed the vending machine in operation at the decedent's school. Id. at 522, 432 S.E.2d at 916.

The trial court entered summary judgment in the defendants' favor, and the plaintiff appealed, arguing, inter alia, that genuine issues of material fact precluded summary judgment on the issue of "'whether [the] defendants were grossly negligent, thus making irrelevant [the] plaintiff's contributory negligence, if any.'" Id. at 527, 432 S.E.2d at 919. The North Carolina Court of Appeals agreed and reversed the trial court's entry of summary judgment, holding that the defendants had "failed to meet their burden of showing that no genuine issue of material fact exist[ed] as to the issue of gross negligence." Id. at 538, 432 S.E.2d at 925. By so holding, the Morgan Court implicitly acknowledged that contributory negligence does not bar recovery where a defendant commits gross negligence in the product liability context. See also Lashlee v. White Consol. Indus., Inc., 144 N.C. App. 684, 693, 548 S.E.2d 821, 827 (2001) (observing, in a product liability action alleging the negligent design and manufacture of a chainsaw, that "contributory negligence will not bar recovery where the

17

defendant is guilty of willful or wanton negligence" (internal quotation marks omitted)).

Because North Carolina courts have recognized that a defendant's gross negligence, and/or intentional, willful, and wanton conduct can overcome a contributory negligence defense in a product liability action, the Court cannot conclude that the Gross Negligence Claim, supported by the additional facts from the <u>Harman</u> Case, qualifies as futile.[12]

## B. Undue Prejudice

The foregoing resolution of the futility issue requires the Court to address the question of whether allowing Plaintiff to add the Gross Negligence Claim (and supporting facts) at this "late stage" in the case would result in prejudice by requiring the parties to engage in additional discovery and motions practice. (Docket Entry 72 at 13.) On that subject, Plaintiff asserts that the "[a]dditional detail relating to [the <u>Harman</u> Case] is hardly surprising to [Defendants], as it is intimately familiar with that case" as parties to that action. (Docket Entry 75 at 2.)

---

[12] Defendants also assert that "Intentional, Willful, and Wanton Conduct / Punitive Damages" as pleaded in the Proposed Complaint does not constitute an independent cause of action. (Docket Entry 72 at 12.) Regardless of the validity of that assertion, allowing Plaintiff to plead facts to support punitive damages raises no futility concern. <u>See</u> <u>Lashlee</u>, 144 N.C. App. at 693-94, 548 S.E.2d at 827-28 (acknowledging availability of punitive damages in product liability action where "act of negligence [is] willful or wanton"). Additionally, Defendants do not contend that the proposed facts are insufficient to justify punitive damages. (<u>See</u> Docket Entry 72.)

Plaintiff further contends that these <u>Harman</u> Case details "establish that [Defendants] knowingly placed modified and unapproved products on the highway system," and that, "[b]ecause the [<u>Harman</u> Case] facts relate only to what [Defendants] knew, those allegations should not require discovery from [Plaintiff] or others." (<u>Id.</u> at 2-3.)

Here, the parties discussed Plaintiff's proposed amendment in their Rule 26(f) conference. (<u>See</u> Docket Entry 53 at 5.) Furthermore, as provided for in the Rule 26(f) Report, Plaintiff timely filed the Motion to Amend following resolution of Defendants' Judgment Motion. (<u>See</u> <u>id.</u>; <u>see also</u> Docket Entries 64, 68.) This filing occurred approximately one year before the scheduled trial in this case (<u>see</u> Docket Entries 57, 68), and at least two months before the close of discovery (<u>see</u> Text Order dated February 24, 2016). As such, Defendants possessed knowledge of the potential for amendment during the entire discovery period, and have known the particular facts and claims Plaintiff seeks to add for a substantial portion of the discovery period. Those considerations weigh against a finding of undue prejudice. <u>See generally</u> <u>Johnson</u>, 785 F.2d at 510 (recognizing that, "[i]t is true that prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies where the amendment is

19

offered shortly before or during trial"); <u>Davis v. Piper Aircraft Corp.</u>, 615 F.2d 606, 613 (4th Cir. 1980) (noting that, "[b]ecause [the] defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case").

Moreover, the facts alleged in the Proposed Complaint do not significantly vary from the Original Complaint, which expressly references the <u>Harman</u> Case. (<u>Compare</u> Docket Entry 1, <u>with</u> Docket Entry 68-1.) Rather, the Proposed Complaint adds a claim for gross negligence under North Carolina law, along with additional details from the <u>Harman</u> Case in an attempt to establish that Defendants' conduct qualified as intentional, willful, and/or wanton, thus eliminating Defendants' potential contributory negligence defense and authorizing an award of punitive damages. As parties to the <u>Harman</u> Case, Defendants know the facts of that case. In addition, because the Original Complaint included a "negligence & product liability" claim, the parties have presumably already engaged in discovery regarding Defendants' alleged negligence (which discovery inevitably would encompass the same evidence pertinent to the Gross Negligence Claim). (<u>See</u> Docket Entry 1 at 7 (bold emphasis and all-caps omitted).) Under these circumstances, the Court concludes

that the addition of the Gross Negligence Claim and related supporting facts would not result in undue prejudice.[13]

## CONCLUSION

Because Plaintiff cannot bring the UDTP Claim, her request to add such claim fails as futile, without consideration of Defendant's Judicial Notice Request. However, the Proposed Complaint's inclusion of the Gross Negligence Claim and supporting facts suffers from no such futility and results in no undue prejudice.

**IT IS THEREFORE ORDERED** that the Motion to Amend (Docket Entry 68) is **GRANTED in part and DENIED in part** as follows: by September 2, 2016, Plaintiff shall file an amended complaint substantially in the form of the attachment to the Motion to Amend (Docket Entry 68-1), but excluding the UDTP Claim and related demand for treble damages.

---

[13] Discovery will close on September 2, 2016. (See Text Order dated July 25, 2016.) If Defendants can show a specific need for particular discovery arising from this amendment and can demonstrate that they reasonably refrained from seeking such discovery until the Court ruled on the Motion to Amend, they may promptly seek appropriate relief.

**IT IS FURTHER ORDERED** that the Judicial Notice Request is **DENIED as MOOT.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 31, 2016